# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PAUL D. BEDERSON, as personal
representative of the estate of Robert D.
Bederson, deceased,

    Plaintiff,

      v.

UNITED STATES OF AMERICA, *et al.*,

    Defendants.

Civil Action No. 09–688 (CKK)

## MEMORANDUM OPINION
(December 21, 2010)

Plaintiff Paul Bederson ("Plaintiff") brings the above-captioned action against

Defendants United States of America, Melissa Turner, M.D. ("Dr. Turner"), and Ajay Bakshi,

M.D. ("Dr. Bakshi"), asserting two counts of negligent medical care and treatment. *See* Am.

Compl., Docket No. [23], ¶¶ 17-24. Count I is asserted against the United States and Dr. Turner

(collectively, "Federal Defendants"), while Count II is asserted against Dr. Bakshi. *Id.*

Presently before the Court is Dr. Bakshi's [10] Motion to Transfer ("Def.'s Mot."), in which he

argues (1) that the Court should transfer this entire case to the Southern Division of the United

States District Court for the District of Maryland ("District of Maryland") pursuant to 28 U.S.C.

§ 1404(a) ("§ 1404(a)"); or (2) in the alternative, that the Court should sever the claims in this

case and then transfer only Count II to the District of Maryland. Plaintiff has filed an opposition,

Dr. Bakshi has filed a reply, and the Federal Defendants have filed notice that they have no

position as to Dr. Bakshi's motion to transfer under § 1404(a), but oppose Dr. Bakshi's motion

to sever. For the reasons set forth below, the Court shall DENY Dr. Bakshi's Motion to Transfer

because (1) transfer of this entire case is not appropriate in light of the relevant private and public interest factors that govern the Court's consideration of § 1404(a) transfers; and (2) Dr. Bakshi is properly joined as a party in this case and he will not be prejudiced by litigating this case in the District of Columbia.

## I. BACKGROUND

Robert Bederson ("Bederson") was a citizen of Maryland and a retired member of the U.S. military. Am. Compl. ¶¶ 4, 8-9.[1] On June 1, 2007, Bederson went to the U.S. Department of Veterans Affairs Medical Center located in the District of Columbia at 50 Irving Street, N.W. ("D.C. Medical Center"), for a follow-up appointment regarding his earlier cardiac stenting procedure. *Id.* ¶¶ 9-10. During this appointment, Bederson complained of feeling weak, tired, and falling easily, and his blood was drawn for analysis. *Id.* ¶¶ 10-11. Plaintiff avers that Bederson's blood test revealed that he "had developed a significant anemia," but that Bederson was not informed of these results until June 17, 2007. *Id.* ¶¶ 11-12. Bederson's treating physician during his June 1, 2007 appointment was Dr. Turner, who was employed by the United States. *See id.* ¶¶ 6, 12.

On June 14, 2007, before Bederson allegedly discovered the results of his blood test,

---

[1] Originally, Bederson filed the Complaint in this case on his own behalf. *See* Compl., Docket No. [1], ¶ 4. After the parties filed their briefings on Dr. Bakshi's motion to transfer, but while the motion was still pending, Robert Bederson died. Min. Order (July 29, 2010). Accordingly, Plaintiff filed a [22] Consent Motion for Leave to File an Amended Complaint, in which he informed the Court that he was the personal representative of Bederson's estate and requested leave to amend the Complaint so as to substitute himself as plaintiff and continue the case as a Survival Action. The Court granted Plaintiff's motion, Min. Order (July 29, 2010), and Plaintiff subsequently filed his [23] Amended Complaint. The Court shall cite to the Amended Complaint when appropriate in this Memorandum Opinion because Plaintiff stipulated that the Court's resolution of the pending motion would apply to and control his Amended Complaint and the Amended Complaint's allegations do not materially differ from those set forth in the Complaint. *See* Min. Order (July 29, 2010); Consent Mot. for Leave to File Am. Compl. at 1.

Bederson underwent an esophagogastroduodenoscopy with biopsy, and a balloon dilatation of a distal esophageal stricture (hereinafter, "esophagogastroduodenoscopy"), which was performed by Dr. Bakshi. *Id.* ¶ 14. Dr. Bakshi, a resident of the District of Columbia ("District"), is licensed to practice medicine only in the state of Maryland and his office is located in Maryland. *Id.* ¶ 7; Def.'s Mot., Ex. A (Aff. of Ajay Bakshi, M.D. ("Bakshi Aff.")) ¶¶ 3-5, 7. According to Dr. Bakshi, he performed Bederson's esophagogastroduodenoscopy in Maryland. *See* Bakshi Aff. ¶¶ 7, 9.[2] Plaintiff avers that before Bederson underwent this procedure, Dr. Bakshi did not properly advise Bederson to cease taking the blood thinner medication that Bederson had been on since his cardiac stenting procedure. Am. Compl. ¶¶ 9, 15. Plaintiff also claims that Dr. Bakshi did not administer intravenous heparin to Bederson either preoperatively or intraoperatively. *Id.* ¶ 15. Plaintiff alleges that, as a result of both the Federal Defendants' and Dr. Bakshi's negligence, Bederson suffered internal bleeding during the esophagogastroduodenoscopy and had to be hospitalized. *Id.* ¶¶ 15, 17-24.

The Complaint in this case was filed on April 13, 2009. Plaintiff asserts one claim of medical negligence against the Federal Defendants (Count I) and another against Dr. Bakshi (Count II); both claims arise out of Defendants' care and treatment of Bederson. Am. Compl. ¶¶ 17-24. Plaintiff alleges that this Court has jurisdiction over Count I pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1), and over Count II pursuant to this Court's diversity jurisdiction, 28 U.S.C. § 1332. *See id.* ¶¶ 1-2. Plaintiff further avers that venue is

---

[2] Although Dr. Bakshi attests that his only contacts with Bederson occurred at either his office in North Bethesda, Maryland, Holy Cross Hospital in Silver Spring, Maryland, or Suburban Hospital in Bethesda, Maryland, Bakshi Aff. ¶ 7, neither the Complaint, Amended Complaint, nor Dr. Bakshi's affidavit indicate in what facility the esophagogastroduodenoscopy was performed, *see generally id.*; Compl.; Am. Compl.

proper in the District because: (1) the acts and omissions comprising Count I occurred in the District; and (2) Dr. Bakshi, the only defendant in Count II, resides in the District. *Id.* ¶ 3. On August 20, 2009, Dr. Bakshi filed his [8] Answer, [9] Motion to Dismiss Count II for failure to comply with Maryland's Health Care Malpractice Claims Act ("Health Care Malpractice Claims Act"), Md. Cts. & Jud. Code Ann. § 3-2A-01 *et seq.*, and [10] Motion to Transfer. On August 28, 2009, Plaintiff filed, and this Court subsequently granted, a [11] Consent Motion to Stay Dr. Bakshi's motion to dismiss pending Plaintiff's submission of Count II to arbitration pursuant to the Heath Care Malpractice Claims Act. Min. Order (Aug. 29, 2009). Additionally, this Court granted the Federal Defendants' [14] Unopposed Motion to Stay the case as to them pending the outcome of Dr. Bakshi's motion to transfer. Min. Order (Nov. 3, 2009).

On November 25, 2009, the parties advised the Court by a [16] Joint Status Report that the arbitration proceedings regarding Count II had concluded. Accordingly, in a pair of minute orders, the Court lifted the stay as to Dr. Bakshi's motion to dismiss, ordered Dr. Bakshi to show cause as to why the completion of the arbitration proceedings did not moot his motion to dismiss, and provided a schedule for responsive briefing to Dr. Bakshi's motion to transfer. *See* Min. Orders (Dec. 3, 2009). Dr. Bakshi subsequently withdrew his motion to dismiss. *See* [17] Praecipe – Withdrawal of Mot. In the motion to transfer that remains, Dr. Bakshi argues (1) that the Court should transfer this entire case to the District of Maryland pursuant to § 1404(a); or (2) in the alternative, that the Court should sever the claims in this case and then transfer only Count II to the District of Maryland. Plaintiff has filed an [18] opposition ("Pl.'s Opp'n") and Dr. Bakshi has filed a [20] reply ("Def.'s Reply").

The Federal Defendants have filed a [19] notice of their position ("Notice"), which provides in pertinent part:

> [T]he Federal Defendants have no position on [Dr.] Bakshi's Motion to Transfer. Federal Defendants are equally capable of defending this action whether the case is before this Court or the District of Maryland. Thus, Federal Defendants foresee no prejudice whether the case is seated here or in Maryland. Second, the Federal Defendants request that the Court not sever [Dr.] Bakshi from these proceedings. It makes little sense to have two cases in different courts when the nucleus of operative facts involve both defendants.Moreover, to the extent that [Dr.] Bakshi would, at some later point, try to join or have the United States otherwise indemnify him for any liability he may be found to have, the Federal Defendants have a strong preference to have the issues litigated together rather than separately.

Notice at 1-2. The parties' briefing on the pending motion is now complete, and the matter is therefore ripe for review and resolution by this Court.

## II. LEGAL STANDARD AND DISCUSSION

### A. *Motion to Transfer*

Dr. Bakshi moves to transfer venue pursuant to § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Accordingly, the threshold consideration in this motion to transfer is whether this case "might have been brought" in the District of Maryland. Claims asserted under the FTCA, such as Count I, "may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b). In comparison, claims asserted pursuant to this Court's diversity jurisdiction, such as Count II, may

> be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). In this case, the parties agree, as they must, that venue would also be proper in the District of Maryland. *See* Def.'s Mot. at 3; Pl.'s Opp'n at 3. Plaintiff resides in

Maryland, rendering venue for Count I under the FTCA proper in the District of Maryland.[3]

Additionally, "a substantial part of the events or omissions giving rise to" Count II occurred in

Maryland: Dr. Bakshi's and Bederson's relationship was centered in Maryland and Dr. Bakshi

performed Bederson's esophagogastroduodenoscopy in Maryland. 28 U.S.C. § 1391(a)(2).

Although the District of Maryland would be a proper venue, Dr. Bakshi still "must

demonstrate that the 'balance of convenience of the parties and witnesses and the interest of

justice are in [] favor'" of transferring venue to the District of Maryland. *S. Utah Wilderness

Alliance v. Norton*, 315 F. Supp. 2d 82, 86 (D.D.C. 2004) (quoting *Consol. Metal Prods. v. Am.

Petroleum Inst.*, 569 F. Supp. 773, 774 (D.D.C. 1983)). To determine whether Dr. Bakshi has

met this burden, the Court must conduct an "'individualized, case-by-case consideration of

convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988) (quoting

*Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). A series of private and public interest factors

are typically evaluated to ascertain the convenience and fairness of transferring venue. *See, e.g.*,

*Greene v. Nat'l Head Start Ass'n*, 610 F. Supp. 2d 72, 74-75 (D.D.C. 2009). The private interest

factors that are considered include: (1) the plaintiff's choice of forum; (2) the defendant's choice

of forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of

the witnesses; and (6) the ease of access to the sources of proof. *Id.* (quoting *Demery*, 602 F.

Supp. 2d at 210). The public interest factors, in comparison, include: (1) the local interest in

---

[3] Plaintiff is a resident of Maryland. *See* Am. Compl. at 1 (listing Plaintiff's address in Maryland). It is Plaintiff's residence, and not Bederson's former residence, that is relevant for purposes of venue under the FTCA. *See Lopez v. United States*, 68 F. Supp. 2d 688, 691 (M.D.N.C. 1999) ("Where claims are brought on behalf of a Decedents' estate, '[w]here the plaintiff resides is determined by the residence of the administrator for purposes of venue under the FTCA.'" (quoting *Andrade v. Chojnacki*, 934 F. Supp. 817, 829 n.23 (S.D. Tex. 1996))); *accord MacGuineas v. United States*, No. 87-CV-855 SSH, 1987 WL 18473, at *1 (D.D.C. Oct. 1, 1987).

making local decisions regarding local controversies; (2) the relative congestion of the transferee and transferor courts; and (3) the potential transferee court's familiarity with the governing law. *Id.* (quoting *Demery*, 602 F. Supp. 2d at 210). When evaluating the aforementioned factors, courts may consider undisputed facts outside of the pleadings. *See Thayer/Patricof Educ. Funding, LLC v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 33 (D.D.C. 2002); *see also Midwest Precision Servs., Inc. v. PTM Indus. Corp.*, 574 F. Supp. 657, 659 (N.D. Ill. 1983) ("In ruling upon a motion to transfer under 28 U.S.C. § 1404(a), the Court may consider only undisputed facts presented to the Court by affidavit, deposition, stipulation or other relevant documents."). Ultimately, "[t]he decision whether or not to transfer the case to another judicial district pursuant to 28 U.S.C. § 1404(a) is discretionary." *In re DRC, Inc.*, 358 Fed. App'x 193, 194 (D.C. Cir. 2009).

Before examining the facts of this case in light of the relevant private and public factors, the Court pauses to resolve the parties' disagreement as to the proper scope of inquiry under each factor. Plaintiff suggests that the Court should examine the factors in light of all of the claims asserted in this case—i.e., Counts I and II. *See, e.g.*, Pl.'s Opp'n at 5-7. Dr. Bakshi, in contrast, intimates that the factors should be examined only in light of Count II, which is the claim asserted against him. *See, e.g.*, Def.'s Mot. at 6; Def.'s Reply at 2-3. Neither party acknowledges this disagreement, much less provides any authority in support of his position. Nevertheless, the Court agrees with Plaintiff that the factors must be examined in light of all the claims in this case. Notably, the plain language of § 1404(a) permits transfer of an entire "civil action," and not of discrete claims therein. *See Richter v. Analex Corp.*, 940 F. Supp. 353, 360 n.9 (D.D.C. 1996) ("28 U.S.C. § 1404 'only authorizes the transfer of an entire action, not individual claims.'" (quoting *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509,

1518 (10th Cir. 1991))); *accord Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968).

Therefore, as the purpose of the private and public interest factors is to indicate whether transfer

of an entire case is appropriate under § 1404(a), these factors must be examined in regard to all

the claims in a case. *See In re Volkswagen AG*, 371 F.3d 201, 204 (5th Cir. 2004) (per curiam)

(district court erred by failing to consider the interests of "the parties and witnesses in all claims

and controversies properly joined in [the] proceeding," including third-party claims).

Accordingly, the Court shall examine the relevant private and public interest factors in light of

both Counts I and II.

### 1. Private Interest Factors

To reiterate, the relevant private interest factors are: (1) Plaintiff's choice of forum; (2)

Dr. Bakshi's choice of forum, (3) where the claims arose, (4) the convenience of the parties; (5)

the convenience of the witnesses; and (6) the ease of access to the sources of proof. *Greene*, 610

F. Supp. 2d at 74-75 (quoting *Demery*, 602 F. Supp. 2d at 210). For the reasons set forth below,

the Court concludes that these factors weigh against transferring venue.

### a. Plaintiff's Choice of Forum

First, "[t]he moving party 'bear[s] a heavy burden of establishing that plaintiff['s] choice

of forum is inappropriate.'" *Norton*, 315 F. Supp. 2d at 86 (quoting *Pain v. United Tech. Corp.*,

637 F.2d 775, 784 (D.C. Cir. 1980)) (second alteration in the original). Accordingly, the

"plaintiff's choice of forum is ordinarily accorded deference." *Greene*, 610 F. Supp. 2d at 75

(quoting *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 80 (D.D.C. 2009)). This deference is

diminished, however, when the chosen forum is not the plaintiff's home forum, *Marks v. Torres*,

576 F. Supp. 2d 107, 111 (D.D.C. 2008), and when the defendant seeks transfer to the plaintiff's

home forum, *Airport Working Grp. Orange Cnty. v. U.S. Dep't of Defense*, 226 F. Supp. 2d 227,

230 (D.D.C. 2002). In this case, Dr. Bakshi argues that this Court should afford Plaintiff's choice of forum less deference because Plaintiff is a Maryland resident. Def.'s Reply at 2. The Court agrees and finds that Plaintiff's choice of forum is entitled to diminished deference.

b.      Dr. Bakshi's Choice of Forum

Dr. Bakshi's choice of forum weighs in favor of transfer. Plaintiff is, and Bederson was, a resident of Maryland; Bederson's esophagogastroduodenoscopy was performed in Maryland; and Dr. Bakshi's and Bederson's relationship was centered in Maryland. Nevertheless, the Court concludes that this factor does not overwhelmingly weigh in favor of transfer for two reasons. First, Maryland is not the only situs of alleged negligence in this case, as Count I asserts that the Federal Defendants' treatment of Bederson at the D.C. Medical Center was negligent. Second, similar to the first factor above, the Court affords Dr. Bakshi's selection of his non-resident forum diminished deference. "When the home forum has been chosen, it is reasonable to assume that this choice is convenient." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981). It is this presumption that justifies affording less deference to a plaintiff's choice of a non-resident forum. *See, e.g.*, *Marks*, 576 F. Supp. 2d at 111 (citing *Piper*, 454 U.S. at 255-56). The Court concludes that this assumption similarly justifies affording Dr. Bakshi's choice of Maryland, despite being a resident of the District, to less deference.

c.      Where the Claims Arose

Dr. Bakshi argues that where Plaintiff's claims arose weighs in favor of transfer because his alleged negligence occurred in Maryland. *See* Def.'s Reply at 2. Plaintiff, in contrast, posits that this factor is neutral, as the Federal Defendants' alleged negligence occurred in the District and Dr. Bakshi's alleged negligence occurred in Maryland. Pl.'s Opp'n at 5. As this factor is examined in light of all the claims asserted in this case, *see supra* pp. 7-8, the Court agrees with

Plaintiff and finds that this factor does not weigh in favor or against transfer.

d.     Convenience of the Parties

Dr. Bakshi also argues that the convenience of the parties weighs in favor of transfer because Plaintiff is a Maryland resident, Def.'s Mot. at 5-6, and the increased travel time associated with litigating in the District, Def.'s Reply at 2-3.  The Court disagrees.  First, the Court is not persuaded by Dr. Bakshi's appeal to Plaintiff's convenience.  Even assuming, *arguendo*, that litigating this case in the District were inconvenient for Plaintiff, Plaintiff has elected to endure this inconvenience, and as such this fact does not weigh in favor of transferring venue.  *See, e.g.*, *Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*, No. C 03-3711 MHP, 2003 WL 22387598, at *4 (N.D. Cal. Oct. 14, 2003) ("Defendant cannot assert plaintiff's inconvenience in support of a motion to transfer under 28 U.S.C. § 1404(a)."); *Am. Can Co. v. Crown Cork & Seal Co.*, 433 F. Supp. 333, 338 (E.D. Wis. 1977) ("The defendant cannot assert plaintiff's inconvenience in support of a motion to transfer.").

Second, the increased travel times Dr. Bakshi complains of are too trivial to amount to an inconvenience.  As an initial matter, the Court notes that Dr. Bakshi first raised the issue of increased travel times in his reply brief.  Generally, courts do not consider arguments raised for the first time in a reply brief, *see, e.g.*, *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008) ("We need not consider this argument because plaintiffs . . . raised it for the first time in their reply brief."), and the Court declines to do so here.  In any event, even if the Court were to consider Dr. Bakshi's argument here, it would not alter the Court's conclusion.  Although Dr. Bakshi frames the increased travel times in terms of percentages, his argument boils down to a claim that the District is an inconvenient forum because the parties could save 19, 13, or 11 *minutes* of travel time if venue were transferred.  *See* Def.'s Reply, Ex. A (Directions).  Such

slight variations in travel time do not cause this factor to weigh in favor of transfer.[4]  *See, e.g.*, *Demery*, 602 F. Supp. 2d at 211 ("[T]he close proximity of the district courts in Maryland and the District of Columbia hardly poses any obstacle to the parties' appearance here, the defendants' ability to present witnesses, or their access to sources of proof."); *Modaressi v. Vedadi*, 441 F. Supp. 2d 51, 57 (D.D.C. 2006) ("[T]he geographic distance between this Court and . . . the District of Maryland is far too small to present anything more than minor practical difficulties for the parties or their witnesses.").  Nonetheless, as Plaintiff has not claimed that he would be inconvenienced by litigating this case in the District of Maryland, *see* Pl.'s Opp'n at 5, the Court concludes that this factor is neutral as to transfer.

e.     Convenience of the Witnesses

"The convenience of the witnesses 'is considered only to the extent that the witnesses may actually be unavailable for trial in one of the fora.'"  *Mohammadi v. Scharfen*, 609 F. Supp. 2d 14, 18 (D.D.C. 2009) (quoting *Mahoney v. Eli Lilly & Co.*, 545 F. Supp. 2d 123, 127 (D.D.C. 2008)).[5]  "Without evidence to the contrary, courts assume that witnesses will voluntarily appear."  *Mahoney*, 545 F. Supp. 2d at 127 (quoting *FC Inv. Grp. LC v. Lichtenstein*, 441 F. Supp. 2d 3, 14 (D.D.C. 2006)).  In this case, Dr. Bakshi does not claim that any potential witnesses will be unavailable to testify in the District.  *See* Def.'s Mot. at 5-6; Def.'s Reply at 2-3.  Moreover, given the proximity between the federal courthouse where this Court sits and the

---

[4] Moreover, two of the three locations from which Dr. Bakshi calculates travel times are actually physically closer to the federal courthouse where this Court sits compared to the District of Maryland—specifically, 5.89 and 4.4 miles closer—while the third is merely 0.31 miles further away.  *See* Def.'s Reply, Ex. A.  This physical proximity further demonstrates that the parties are not inconvenienced by litigating this case in this forum.

[5] Accordingly, the Court does not consider Dr. Bakshi's arguments regarding increased travel times under this factor.  *See* Def.'s Reply at 2-3.

alleged acts and omissions in this case, the Court finds it doubtful that any fact witnesses would

be outside of the Court's subpoena power.  Fed. R. Civ. P. 45(b)(2) (stating that a subpoena may

be served within the district of the issuing court or outside that district but within 100 miles of

the place specified for trial).  Therefore, this factor does not weigh in favor of transfer.

However, as Plaintiff does not claim that any witnesses would be inconvenienced by transferring

this case to the District of Maryland, *see* Pl.'s Opp'n at 5, this factor is neutral.

f. Ease of Access to Sources of Proof

The Court finds that the final private factor is also neutral.  Dr. Bakshi fails to identify

precisely how transferring this case would make accessing evidence easier.  *See* Def.'s Mot. at 5;

Def.'s Reply at 2-3.  Similarly, although Plaintiff argues that this factor does not warrant transfer

because Bederson's medical records are easily obtainable, Plaintiff does not argue that

transferring venue would make the parties' access to sources of proof more difficult.  *See* Pl.'s

Opp'n 5.  Therefore, the Court finds that this factor is neutral.

In conclusion, Plaintiff's choice of forum weighs against transfer, Dr. Bakshi's choice of

forum weighs in favor, and the remaining four factors are neutral.  Effectively, whether the

private factors weigh in favor of transfer amounts to a balancing of Plaintiff's choice of forum

against Dr. Bakshi's choice of forum.  Although Plaintiff's choice of a non-resident forum

entitles his choice to less deference, the Court does not, for the reasons previously stated, confer

great weight to Dr. Bakshi's choice of forum.  *See supra* pp. 9.  This, coupled with the

presumption in favor of maintaining a plaintiff's choice of forum, leads the Court to conclude

that the private interest factors weigh against transfer.  *See Gross v. Owen*, 221 F.2d 94, 95 (D.C.

Cir. 1955) ("It is almost a truism that a plaintiff's choice of a forum will rarely be disturbed and,

so far as the private interests of the litigants are concerned, it will not be unless the balance of

convenience is strongly in favor of the defendant.").

2.   Public Interest Factors

The public interest factors considered in a motion to transfer include: (1) the local interest in making local decisions regarding local controversies; (2) the relative congestion of the transferee and transferor courts; and (3) the potential transferee court's familiarity with the governing law. *Greene*, 610 F. Supp. 2d at 75 (quoting *Demery*, 602 F. Supp. 2d at 210). For the reasons set forth below, the Court concludes that the public interest factors do not weigh in favor or against transfer.

a.   Local Interest in Deciding Local Controversies

Dr. Bakshi argues that the first public interest factor weighs in favor of transfer because Count II asserts that he, a physician licensed by the state of Maryland, allegedly committed medical negligence within Maryland against Bederson, who was a Maryland resident. *See* Def.'s Mot. at 6; Def.'s Reply at 3. Plaintiff counters by claiming that this factor weighs against transfer because, *inter alia*, Count I arises out of acts and omissions committed in the District, Bederson received medical care in the District for the internal bleeding he allegedly suffered as a result of the Defendants' negligence, and Dr. Bakshi is a resident of the District. Pl.'s Opp'n at 6-7.[6] The Court finds that this factor neither weighs in favor nor against transfer. First, the

---

[6] Plaintiff's allegation that Bederson received medical care in the District is not explicitly provided in the Complaint or Amended Complaint and is not otherwise presented to this Court in the form of an affidavit or declaration. *See* Am. Compl. ¶ 16 ("Deceased suffered severe internal bleeding during and after the procedure and was admitted to the hospital on June 17, 2007, for treatment."). Accordingly, the Court does not rely upon this allegation when evaluating this factor. *See Thayer/Patricof Educ. Funding*, 196 F. Supp. 2d at 33; *see also PTM Indus. Corp.*, 574 F. Supp. at 659 ("In ruling upon a motion to transfer under 28 U.S.C. § 1404(a), the Court may consider only undisputed facts presented to the Court by affidavit, deposition, stipulation or other relevant documents.").

aforementioned facts are in relative equipoise. On the one hand, Dr. Bakshi is a resident of the District, the Federal Defendants' place of business is in the District, and Count I arises from alleged acts and omissions committed in the District. On the other, Plaintiff is, and Bederson was, a resident of Maryland, Dr. Bakshi's office is in Maryland, Dr. Bakshi is licensed only in the state of Maryland, and Count II arises from alleged acts and omissions committed in Maryland. With the parties and alleged acts and omissions in this case scattered across Maryland and the District, neither forum has a uniquely local interest in this case. *See Robinson v. Eli Lilly & Co.*, 535 F. Supp. 2d 49, 54 (D.D.C. 2008) (finding that this factor did not favor a particular jurisdiction when the District, Massachusetts, Indiana, and Connecticut all had an arguable interest in the case). Therefore, the Court concludes that this factor does not weigh in favor or against transfer.

b.      Relative Congestion of Each Court

The factor regarding the relative congestion of the transferee and transferor courts is also neutral. Plaintiff argues that this factor weighs against transfer because "[t]he District of Maryland has received more filings than the District of Columbia over the last several years." Pl.'s Opp'n at 6. Dr. Bakshi disagrees, citing how the average time to trial is longer in the District and how, in 2008, the percent of new filings rose in the District and decreased in the District of Maryland. Def.'s Reply at 3. The Court finds that the parties' arguments as to the relative congestion of each court balance, rendering this factor neutral as to transfer.

c.      Transferee Court's Familiarity with Governing Law

Finally, the Court finds that the District of Maryland's familiarity with the governing law in this case also does not weigh in favor or against transfer. Dr. Bakshi devotes considerable time arguing that this factor warrants transfer because (1) Maryland law will govern Count II; (2)

Maryland has expressed a strong public policy regarding medical malpractice claims through its enactment of the Health Care Malpractice Claims Act; and (3) other courts from this Circuit have transferred medical malpractice claims to the forum whose law governed the claims. *See* Def.'s Mot. at 4-9. Because Dr. Bakshi fails to account for the fact that although Maryland law applies to Count II, the law of this forum applies to Count I, his arguments are ultimately unconvincing.[7]

For FTCA claims, this Court applies the choice-of-law rules of "'where the act or omission occurred;'" in other words, "where the negligence took place, not where it had its 'operative effect.'" *Hitchcock v. United States*, 665 F.2d 354, 359 (D.C. Cir. 1981) (quoting *Richards v. United States*, 369 U.S. 1, 10 (1962)). In this case, the District's choice of law rules apply to Count I because the acts and omissions comprising Count I occurred in the District at the D.C. Medical Center, even though at least some of the alleged effects of these acts or omissions—Bederson's internal bleeding—began in Maryland.[8] When exercising its diversity

---

[7] The Court reiterates that Dr. Bakshi's arguments regarding the private and public interest factors do not take into account Count I, much less address whether this particular factor weighs in favor of transfer when District of Columbia law applies to Count I and Maryland law applies to Count II. In addition, the cases Dr. Bakshi relies upon are easily distinguishable from the instant case, as they only concern the application of a single jurisdiction's law. *See, e.g.*, Def.'s Mot. at 7 (citing *Ott v. Kaiser-Georgetown Cmty. Hosp. Plan, Inc.*, 689 F. Supp. 9 (D.D.C. 1988)).

[8] The parties do not meaningfully address which jurisdiction's law governs Count I. Dr. Bakshi's and the Federal Defendants' filings do not address this issue at all. *See generally* Def.'s Mot.; Def.'s Reply; Notice. Plaintiff, in comparison, addresses this issue only obliquely: "Maryland law may or may not apply to this case; this Court can decide the applicability of any such law, to the extent it exists, as well as the District of Maryland." Pl.'s Opp'n at 6. Given the parties' unwillingness to address this issue and the fact that the Federal Defendants have yet to file their responses to the Complaint or Amended Complaint, the Court stresses that its conclusion in this Memorandum Opinion regarding which jurisdiction's law governs Count I is based on the limited state of the present record and is made only for purposes of the pending motion.

15

jurisdiction over Count II, this Court applies the District's choice-of-law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). The application of the District's choice-of-law rules to Counts I and II would not change even if this case were transferred to the District of Maryland. *Van Dusen*, 376 U.S. at 821 ("[W]here the defendants seek transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue. A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms.").

Pursuant to the District's choice-of-law rules, courts employ a "modified governmental interests analysis which seeks to identify the jurisdiction with the most significant relationship to the dispute." *Washkoviak v. Student Loan Mktg. Ass'n*, 900 A.2d 168, 180 (D.C. 2006) (quotation marks and citation omitted). Under this analysis, courts first determine whether a "true conflict" exists between the laws of competing jurisdictions. *GEICO v. Fetisoff*, 958 F.2d 1137, 1141 (D.C. Cir. 1992). Only if a true conflict exists do courts then evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be most advanced by the application of its law to the facts of the case, taking into consideration: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship is centered. *Washkoviak*, 900 A.2d at 180 (quoting *District of Columbia v. Coleman*, 667 A.2d 811, 816 (D.C. 1995)).

Although left conspicuously unaddressed by the parties, the Court notes that there is a potential for a true conflict in this case. Only two jurisdictions, Maryland and the District, potentially have an interest in applying their law to Plaintiff's claims: Plaintiff is, and Bederson was, a resident of Maryland, while Dr. Bakshi resides in the District and the Federal Defendants'

16

place of business is in the District. *See GEICO*, 958 F.2d at 1141 (finding "three potentially

'interested' jurisdictions" when the tort occurred in the District, the appellant was incorporated

and had its place of business in Maryland, and the appellee was domiciled in Virginia). In

certain respects, the law regarding medical malpractice claims differs between Maryland and the

District. Maryland law, for example, caps recovery for noneconomic damages. *See* Md. Cts. &

Jud. Code Ann. § 11-108. In addition, Maryland law requires that medical malpractice claims in

excess of $5000 be submitted to mandatory arbitration before they may be pursued in court. *See*

*Bledsoe v. Crowley*, 840 F.2d 639, 643 (D.C. Cir. 1988) (citing Md. Cts. & Jud. Code Ann. § 3-

2A-02(a)). This mandatory arbitration process seeks to "ferret[] out unmeritorious claims" in

order to "lower the cost of malpractice insurance and, potentially, overall health care costs."

*Grp. Health Ass'n, Inc. v. Blumenthal*, 453 A.2d 1198, 1204 (Md. 1983) (citation omitted).

District of Columbia law, in contrast, does not mandate the arbitration of medical malpractice

claims and, in order to hold its practitioners liable for the full extent of their negligence, does not

cap damages in malpractice cases. *See Kaiser-Georgetown Cmty. Health Plan, Inc. v. Stutsman*,

491 A.2d 502, 509 (D.C. 1985). Accordingly, the Court finds that a true conflict between

Maryland and District of Columbia law may exist in this case, and therefore the Court shall

determine which jurisdiction's policy would be most advanced by the application of its law to

the claims in this case.

    In applying the aforementioned choice-of-law factors, the Court concludes that District of

Columbia law governs Count I and Maryland law governs Count II. In regard to Count I,

although Plaintiff is a Maryland resident and Bederson's alleged internal bleeding at least began

in Maryland, the Federal Defendants' place of business is located in the District, their alleged

negligent acts and omissions occurred in the District, and their relationship with Bederson was

centered in the District at the D.C. Medical Center.  The District has a clear interest in holding its

practitioners liable for the full extent of their negligence.  *See Stutsman*, 491 A.2d at 509.  In

contrast, Maryland's purpose in enacting the Health Care Malpractice Claims Act—reducing

practitioners' malpractice insurance as a means of reducing citizens' health care costs—would

not be advanced by application of Maryland law to the out-of-state acts and omissions

comprising Count I.  *See Blumenthal*, 453 A.2d at 1204.  Therefore, on balance and based on the

present record, the choice-of-law factors favor applying District of Columbia law to Count I.  As

for Count II, the factors favor application of Maryland law: Plaintiff is, and Bederson was, a

resident of Maryland; Dr. Bakshi is licensed to practice medicine only in Maryland, his alleged

negligence occurred in Maryland; his place of business is in Maryland; and Bederson's and Dr.

Bakshi's relationship was centered in Maryland.  Accordingly, with the law of both the

transferor and potential transferee courts governing claims in this case, the Court concludes that

the District of Maryland's familiarity with the governing law does not weigh in favor or against

transfer.

In conclusion, the Court finds that all of the public interest factors are neutral regarding

whether this case should be transferred to the District of Maryland.  Given that the private

interest factors weigh against transfer, the balance of all the factors in this case weighs against

transfer.  Accordingly, the Court shall deny Dr. Bakshi's motion to transfer, as he has failed to

establish that transferring this case to the District of Maryland would be more convenient or in

the interest of justice.

B.      *Motion to Sever*

In the alternative, Dr. Bakshi argues that for two reasons this Court should sever

Plaintiff's claims and transfer only Count II to the District of Maryland.  Def.'s Mot. at 9.  First,

pursuant to Federal Rule of Civil Procedure ("Rule") 21, Dr. Bakshi claims that he was improperly joined as a party in this case because Count I and Count II "involve different transactions and occurrences." *Id.* at 10. Additionally, Dr. Bakshi urges this Court to sever Plaintiff's claims under Rule 42(b) because litigating this suit in the District will subject him to prejudice. *Id.* at 11. Plaintiff and the Federal Defendants oppose both grounds for Dr. Bakshi's motion to sever. Pl.'s Opp'n at 7-9; Notice at 1-2. For the reasons set forth below, the Court agrees with Plaintiff and the Federal Defendants, and shall deny Dr. Bakshi's motion to sever.

Pursuant to Rule 21, courts have the discretion to sever any claim against a party who is misjoined. *M.K. v. Tenet*, 216 F.R.D. 133, 137 (D.D.C. 2002). Whether a party is misjoined is a function of Rule 20(a)'s permissive joinder standards. *Montgomery v. STG Int'l, Inc.*, 532 F. Supp. 2d 29, 35 (D.D.C. 2008) (citing *Disparte v. Corporate Exec. Bd.*, 223 F.R.D. 7, 12 (D.D.C. 2004)). Under Rule 20(a), claims against multiple defendants may be joined if: (1) the claims arise out of the same transaction, occurrence, or series of transactions or occurrences; and (2) any question of law or fact common to all defendants will arise in the action. Fed. R. Civ. P. 20(a); *see also Montgomery*, 532 F. Supp. 2d at 35. To satisfy the first prong, the claims must be logically related.[9] *Disparte*, 223 F.R.D. at 10 (citing *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926)). The second prong "requires only that there be some common question of law or fact." *Id.* (citing *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1334 (8th Cir. 1974)). These two prongs are construed in light of Rule 20's purpose: "to promote trial convenience and expedite the final resolution of disputes, thereby preventing multiple lawsuits, extra expense to the

---

[9] "The logical relationship test is flexible because 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Disparte*, 223 F.R.D. at 10 (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

parties, and loss of time to the court as well as the litigants appearing before it." *Tenet*, 216 F.R.D. at 137. Finally, courts often read "Rule 21 . . . in conjunction with Rule 42(b), which allows the court to sever claims in order to avoid prejudice to any party." *Id.* at 138 (citing *Brereton v. Commc'ns Satellite Corp.*, 116 F.R.D. 162, 163 (D.D.C.1987); *see also* Fed. R. Civ. P. 42(b) ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims.").

Dr. Bakshi argues that the first prong of Rule 20(a)'s permissive joinder standards is not satisfied because: (1) unlike the Federal Defendants, he is not affiliated with the D.C. Medical Center; (2) he performed a different procedure than the Federal Defendants; and (3) he performed Bederson's esophagogastroduodenoscopy in Maryland on a different day than when the Federal Defendants' alleged negligence occurred. Def.'s Mot. at 10-11. The Court finds Dr. Bakshi's arguments unavailing because Count I and II are logically related. Specifically, Plaintiff alleges that the confluence of, *inter alia*, the Federal Defendants' failure to timely notify Bederson of his blood tests results and Dr. Bakshi's failure to instruct Bederson to cease taking his blood thinner medication sufficiently in advance of his esophagogastroduodenoscopy caused Bederson to suffer internal bleeding. *See* Am. Compl ¶¶ 15, 17-24. The fact that Plaintiff and the Federal Defendants predict that the Defendants in this case will likely argue that the other is responsible, at least in part, for Bederson's injuries provides additional support for concluding that Counts I and II are logically related. *See* Pl.'s Opp'n at 8; Notice at 1-2. In sum, Plaintiff's claim against Dr. Bakshi (Count II) meets Rule 20(a)'s permissive joinder standards; severing the claims would create duplicative proceedings and the potential for inconsistent findings of liability. Therefore, the Court rejects Dr. Bakshi's motion to sever under Rule 21.

Dr. Bakshi also argues that litigating this case in the District will subject him to prejudice. Def.'s Mot. at 11. To support this claim, Dr. Bakshi essentially reiterates his arguments in support of his motion to transfer and argues that litigating in the District will deprive him of the benefit of certain Maryland law provisions. *Id.* Dr. Bakshi's claims of prejudice are meritless. First, Dr. Bakshi's fear that Maryland law will not apply in this case because, *ipso facto*, this case is being litigated in the District is unfounded. *See supra* pp. 14-18. Second, courts sever claims under Rule 42(b) to avoid prejudice when the simultaneous presentation of all of the claims in a case may prejudice a party. *See, e.g.*, *U.S., ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, No. 95-CV-1231 (RCL), 2007 WL 851823, at *3 (D.D.C. Mar. 14, 2007) (severing the defendants' counterclaims because they were asserted against only one of the plaintiffs and the other plaintiff may be prejudiced by having its co-plaintiff portrayed negatively); *Am. Nat'l Red Cross v. Travelers Indem. Co.*, 924 F. Supp. 304, 308 (D.D.C. 1996) (bifurcating the trial pursuant to Rule 42(b) in part because the defendants may be prejudiced if the jury heard their affirmative defenses along with plaintiff's claims for punitive damages based on the defendants' bad faith). Dr. Bakshi's claims of inconvenience related to litigating in the District do not amount to prejudice under Rule 42(b), nor any of the other justifications for severing claims under Rule 42(b). In conclusion, the Court rejects Dr. Bakshi's arguments that severing Count II is justified under either Rule 21 or Rule 42(b).[10]

### III. CONCLUSION

For the foregoing reasons, the Court shall DENY Dr. Bakshi's [10] Motion to Transfer. Specifically, transfer to the District of Maryland is not appropriate in light of the relevant private

---

[10] As the Court declines to sever the claims in this case, the Court does not reach Dr. Bakshi's argument that Count II alone should be transferred to the District of Maryland.

and public interest factors governing § 1404(a).  Additionally, transfer of Count II alone is not appropriate because Dr. Bakshi is properly joined as a party in this case under Rule 20(a) and he is not subject to prejudice, as defined by Rule 42(b), by litigating this case in the District.  An appropriate Order accompanies this Memorandum Opinion.

Date: December 21, 2010.

_____/s/_____

**COLLEEN KOLLAR-KOTELLY**
United States District Judge
